# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Allison Lopez, a special agent of the Federal Bureau of Investigation ("FBI"), being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. This complaint is presented in support of a criminal complaint and application for an arrest warrant for Rodrigo Santos ("Santos") for his bank fraud in violation of 18 U.S.C. § 1344.

2. As set forth herein, there is probable cause to believe that Santos has engaged in an ongoing scheme to defraud individuals and obtain moneys under the custody or control of financial institutions residing and/or operating in the Northern District of California and elsewhere pursuant to an ongoing bank fraud scheme in violation of Title 18, United States Code, Section 1344, Bank Fraud. Rodrigo Santos is a California licensed civil and structural engineer, operating primarily within the city and county of San Francisco, California. In short, and as described in more detail below, Santos has diverted funds that he or those working for him told his clients were intended to pay the San Francisco Department of Building Inspection ("DBI") for fees associated with permitting and deposited these checks into his own bank account at Bank of America, account ending 1750.

## AFFIANT BACKGROUND

3. I am a Special Agent with the Federal Bureau of Investigation and have been since January 2016. I received approximately 20 weeks of training at the FBI Academy in Quantico, Virginia. During that time, I received training in various areas including evidence collection, interviewing, legal procedure and process, source management, investigative technology, firearms and tactical training, and defensive tactics. I am currently assigned to the

Public Corruption squad of the FBI's San Francisco Field Division. I am responsible for investigating, among other things, violations concerning bank and wire fraud, bribery, obstruction of justice, and extortion. Prior to my work in Public Corruption, I was assigned to the Violent Crimes Against Children squad. I also have a master's degree in Forensic Psychology.

4. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

5. The contents of this affidavit are based upon the following: my own investigation; information obtained from other law enforcement agencies; my review of documents and computer records related to this investigation; oral and written communications with others who have personal knowledge of the events and circumstances described herein; review of public information, including information available on the Internet; review of records received via legal process; and my experience and background as a special agent of the FBI. Statements made by witnesses and other individuals referenced in this affidavit have been paraphrased. Since this affidavit is being submitted for the limited purpose of securing an arrest warrant and order, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that violations of United States laws occurred.

## APPLICABLE LAW

6. Title 18 United States Code, Section 1344 provides whoever, with the intent to defraud, knowingly executes, or attempts to execute, a scheme or artifice – (1) to defraud a

federally insured financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a federally insured financial institution, by means of material false or fraudulent pretenses, representation, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

## FACTS SUPPORTING PROBABLE CAUSE

### Background on Rodrigo Santos and his Bank Account

7. Rodrigo Santos is a California licensed civil and structural engineer, operating primarily within the city and county of San Francisco, California. He is the principal and co-founder of Santos and Urrutia Structural Engineers, Inc., a structural engineering company based in San Francisco. Santos has been involved with inspections work in the city both through his firm and through political appointments. For example, he was appointed to the San Francisco Building Inspection Commission (BIC) in 2000 by Mayor Willie Brown. In 2004, Santos was appointed as BIC President by Mayor Gavin Newsom. Santos was also appointed to the City College Board of Trustees in San Francisco by Mayor Ed Lee in 2012. Santos provides engineering services to clients and works with project owners and other contractors through his structural engineering company. This includes work obtaining building permits from local municipalities, including San Francisco.

8. A review of Santos' bank records, which were obtained by grand jury subpoena, revealed the following: Between January 13, 2016 and March 18, 2019, Santos deposited 261 checks written pay to the order of specific third-party departments/agencies, companies, and one individual amounting to $478,377.83 to his own personal Bank of America account ending in 1750 as follows:

    a.     DBI – 192 checks amounting to $371,801.23

  b.  DPW – 41 checks amounting to $71,713.60

  c.  SF City Planning or Department of Planning – five checks amounting to $8,733.30

  d.  Golden Gate Youth Rugby – eight checks amounting to $7,000.00

  e.  Bureau of Urban Forestry – three checks amounting to $6,397.80

  f.  City of Oakland – three checks amounting to $5,209.00

  g.  Radius Services – three checks amounting to $2,372.20

  h.  ADEPT Construction Solutions – one check amounting to $2,000.00

  i.  Asha Safai – two checks amounting to $1,000.00

  j.  Golden Gate Youth Hockey - one check amounting to $1,000.00

  k.  San Francisco Fire Department – one check amounting to $689.40

  l.  SF Recorders Office – one check amounting to $461.30

9. Bank of America is a federally insured financial institution.

10. I have reviewed checks and DBI permits associated with six different projects and determined that the checks deposited to Santos' personal Bank of America account ending in 1750 could not be traced directly to the cost of any specific permit required by DBI.

**Evidence Regarding Santos Clients D.P. and I.P.**

11. On January 1, 2017, Santos client D.P. wrote check number 2274 from his account ending in 6645 at First Republic Bank pay to the order of DBI. First Republic is a federally insured financial institution. I have interviewed D.P. and I.P., joint owners of the project, and they understood this check was written to the San Francisco Department of Building Inspection to pay for permits related to their residential project. Santos informed D.P. and I.P. that he would not know how much the permit would cost until he arrived at DBI, although he

estimated that it would not cost more than $3,000, and instructed D.P. to write a blank check. D.P. wrote the words "Not to exceed $3,000" in the memo line of the check because D.P. did not feel comfortable writing a blank check.

12. D.P.'s check number 2274, which was ultimately made out for $2,314.50 from his account ending in 6645 at First Republic Bank, was not deposited to a DBI controlled bank account. In fact, it was deposited to the personal Bank of America account of Santos ending in 1750 with the letters "DBI" hand-written in the endorsement field on the reverse of the check.

13. I interviewed D.P. and I.P. and they believed that the check in question paid for a permit at DBI, as they were told by Santos. They did not intend for their check to be deposited into Santos' personal bank account and believe that he stole money from them by doing so.

**Santos Clients M.C. and M.C.C.**

14. During the course of their project, Santos clients M.C. and M.C.C. wrote several checks from their First Republic Bank account ending in 7924 pay to the order of DBI or DPW. Four of these checks were ultimately deposited into Santos' personal bank account. M.C. and M.C.C. understood three of these checks were written to the San Francisco Department of Building Inspection, and one of these checks was written to the San Francisco Department of Public Works to pay for permits related to M.C. and M.C.C.'s residential project. M.C and M.C.C. were told the checks were for permits but were not provided exact amounts, so M.C. and M.C.C. wrote out the checks leaving the amount fields blank.

    a. On June 12, 2017, Santos deposited a check from M.C. and M.C.C. that into his personal bank account, which was made out to DBI for $1,314.40.

    b. On August 4, 2017 M.C. and M.C.C. received an email from their contractor who forwarded them an email from Alex Santos, a structural engineer at Santos and Urrutia and Santos' son. In this email, Alex Santos directed the contractor to have M.C.C. and M.C. write five checks total, three payable to DBI and two payable to

5

DPW. Alex listed the specific purpose of each check, which M.C.C. wrote on the memo line of checks. Alex asked the contractor to "please have owner drop off these blank checks to our office." Two of these five checks, one to DBI for $1,314.40 and one to DPW for $1,641.50, were ultimately deposited to Santos' personal bank account ending 1750.

    c.    In September 2017, Santos requested that M.C. and M.C.C. write another blank check to DBI, which was ultimately made out for $1,914.30 and deposited into Santos' personal bank account.

    d.    In total, four checks from M.C. and M.C.C. were deposited into Santos' personal bank account (one in June 2017, two in August 2017, and one in September 2017). These four checks, which totaled $6,184.60, written from their First Republic Bank account ending in 7924 were not deposited to DBI or DPW controlled bank accounts, as M.C. and M.C.C. believed they had been. In fact, they were deposited to the personal Bank of America account of Santos ending in 1750. Three of these checks had the letters "DBI" hand-written in the endorsement field on the reverse of the check. One of these checks had the letters "DPW" hand-written in the endorsement field of the reverse of the check.

15.    I interviewed M.C. and M.C.C. and they believed that the checks in question paid for permits at DBI and DPW, as they were told by Alex and Rodrigo Santos.

16.    M.C. and M.C.C. did not intend for their checks to be deposited into Santos' personal bank account and believe that he stole money from them by doing so. Their project was successfully completed in or around February 2018 and they have had no dealings with Santos, DBI, or DPW since that time.

**Santos Clients B.D. and A.D.**

17.    Santos clients B.D. and A.D. wrote two checks, dated January 8, 2018 and August

24, 2018, from their First Republic Bank account ending in 4948 pay to the order of DBI or Department of Building Inspection. I have interviewed them, and from that interview, I learned that B.D. and A.D. understood these checks were written to the San Francisco Department of Building Inspection to pay for permits related to B.D. and A.D.'s residential project. B.D. and A.D. were only given estimates for what the permits would cost, so they wrote out the checks leaving the amount fields blank.

18. B.D. and A.D. could not recall exactly who directed them to write the checks but were instructed to drop the checks off at the office of Santos & Urrutia Structural Engineers with the understanding someone from Santos and Urrutia Structural Engineers would take the checks to DBI to pay for permits related to their residential project.

19. B.D. and A.D.'s two checks, which totaled $2,454.80 from their First Republic Bank account ending in 4948, were not deposited to a DBI controlled bank account. In fact, they were deposited to the personal Bank of America account of Santos ending in 1750. One check had the words "DPT. BLDG IN" hand-written in the endorsement field on the reverse of the check. The other check was written pay to the order of DBI but was altered without B.D. and A.D.'s knowledge or permission to read pay to the order of RODBIGO SANTOS. This check was endorsed in the endorsement field on the reverse of the check with a signature which appeared to read Rodrigo Santos.

[Image of a check from First Republic Bank, dated Aug. 24, 2018, pay to the order of Rodrigo Santos for $1,314.50, "Thirteen hundred and fourteen 50/100 Dollars", For: 248 Prospect (ADD #1 REINS), check #195. Back of check shows endorsement.]

20. I interviewed B.D. and A.D. and they believed that the checks in question paid for permits at DBI. They did not intend for their checks to be deposited into Santos' personal bank account and believe that he stole money from them by doing so.

**Altered Invoices Submitted to the Government.**

21. On March 2, 2020, I approached and interviewed Santos. At the conclusion of that interview, I served a grand jury subpoena directed to Santos & Urrutia for documents, DBI receipts, etc. related to six specific checks connected to the above-described bank fraud scheme.

22. On March 27, 2020, Santos' attorney submitted documents responsive to the

8

above-described subpoena via email to two Assistant United States Attorneys. The attorney stated that these documents had come directly from Santos. These documents were supposed invoices that Santos sent to his clients, which showed that Santos' clients received credits for the checks made out to DBI. Santos submitted the following invoice (redacted to remove D.P. and I.P.'s full names), made out to Santos clients D.P and I.P., which would seem to show that they received a credit for the check they wrote to DBI:



August 23, 2019     Invoice No. 11912-01

Re: ▇ Waller Street, SF, CA
S&U Job No. 11912
Subject: Structural Engineering Services

Dear ▇:

The following constitutes an invoice for services mentioned below.

Services through August 23, 2019:
Engineering Services 31.5 hours @ $200/hour _____ $ 6,300.00
- Site Visit ADU and lower Floor
- ADU Plans, proposed condition, elevations
- Prepared ADU submittal/2 Full set package for submission
- ADU application through planning

Payment 05/15/19 _____ -$ 1,500.00

CREDITS
Permit Acquisition and Interaction with DBI personnel _____ ($2,314.50)

Total Due _____ $2,485.50

If you have any questions, please contact our Office Manager 415-642-7722 ext. 133 at your earliest convenience.

Sincerely,
Santos & Urrutia Structural Engineers

Rodrigo Santos, S.E.

23. This invoice seems to show that Santos' clients received a credit for $2,314.50 for "Permit Acquisition and Interaction with DBI personnel."

24. Our investigation, however, has revealed that this invoice is not genuine. Instead, we have probable cause to believe Santos altered it. On the afternoon of March 27, 2020, I contacted D.P and I.P to ask if they had a copy of the actual invoice they received from Santos & Urrutia on August 23, 2019. They did have a copy, which they received via email from Patricia Urrutia. The following is the actual invoice D.P. and I.P. received from SANTOS:



August 23, 2019

Invoice No. **11912-01**

Re:       Waller Street, S.F., CA
S & U Job No. 11912
Subject: Structural Engineering Services

The following constitutes an invoice for services mentioned below

Services through August 23, 2019:
Engineering Services 31.5 hours @ $200/hour ---------------------------------- $ 6,300.00
- Site visit ADU and lower floor
- ADU plans, proposed condition, elevations
- Prepared ADU submittal/printed 2 sets for submission
- ADU application through planning

Payment ($1500.00 on 5/15/19)                                              - $ 1,500.00

**Total Due**                                                                $ 4,800.00

If you have any questions, please contact our Office Manager 415-642-7722 ext. 133 at your earliest convenience.

Sincerely,
Santos & Urrutia Structural Engineers

Rodrigo Santos, S.E.

25. As can be seen from this actual invoice, Santos clients D.P. and I.P. did not receive a credit for $2,314.50. Instead, it appears Santos added in the "CREDITS" line of the invoice after the fact, which he then sent to the U.S. Attorney's Office on March 27, 2020. A comparison of the two invoices also shows that SANTOS' signature is different.

26. Among other documents, Santos' attorney also submitted an invoice to the U.S. Attorney's Office that had allegedly been sent to Santos clients M.C. and M.C.C. Similarly, the invoice Santos' attorney submitted had a "CREDIT" for "Permit Acquisition and Interaction with DBI personnel." I contacted Santos clients M.C. and M.C.C. Similarly, M.C. and M.C.C. produced an invoice that did not match the one Santos provided to the U.S. Attorney's Office, and did not have a "CREDIT" for the amount of the check made out to DBI.

## CONCLUSION

27. Based on the foregoing, my training and experience, and the training and experience of agents and investigators involved in this investigation, I believe there is probable cause to believe that Rodrigo Santos is involved in the commission of bank fraud in violation of Title 18, United States Code, Section 1344. Accordingly, I respectfully request an arrest warrant be issued for Santos.

## SEALING REQUEST

28. Because this investigation is continuing, disclosure of the warrant, this affidavit, and/or attachments thereto will jeopardize the progress of the investigation. In addition, disclosure of the complaint and arrest warrant at this time would seriously jeopardize the investigation and would allow Santos to change patterns of behavior, notify other confederates, destroy evidence, or flee or continue flight from prosecution. Accordingly, I request that the Court issue an order that the complaint, arrest warrant, this affidavit in support of application for

complaint and arrest warrant, and all attachments thereto be filed under seal until further order of this Court.

/s Allison Lopez

_____
 **ALLISON LOPEZ**
Special Agent
**FEDERAL BUREAU OF INVESTIGATION**

Subscribed and sworn before me on this 11th day of **May, 2020.**

_____
**HONORABLE LAUREL BEELER**
United States Magistrate Judge